

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

*445 Broadway, Room 218*     *Tel.: (518) 431-0247*
*James T. Foley U.S. Courthouse*     *Fax: (518) 431-0249*
*Albany, New York 12207-2924*

December 19, 2023

**BY ECF**

Hon. Anne M. Nardacci
U.S. District Judge
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

      RE:    *United States v. Scarlet Shadows*, No. 1:23-CR-124 (AMN) (N.D.N.Y.)

Dear Judge Nardacci:

      I write to provide a brief response to the sentencing memorandum and psychosexual assessment submitted by the defense earlier today. *See* Dkt. ## 49, 50.

      To start, the defendant's recounting of the events underlying her arrest to the assessors, Dkt. # 50 at 6-7, is demonstrably false and raises concerns. In sum, the defendant first claims that she did not appreciate that the undercover adult foster mother and the undercover 11-year-old were different people. *Id.* at 6. Then the defendant claimed that she "intended to get married to [the 11-year-old] when [the girl] was 14 years old adding that [the defendant] continued having a conversation with the girl despite having no intent for engaging in sexual activity out of desperation [because] 'I was desperate to not be single, I feel so lonely when I am single.'" *Id.* at 6-7. All of this does not mesh with the record. The chats set forth in the PSIR are clear that the adult caregiver and the girl are different people. *See, e.g.*, PSIR ¶¶ 9-10. What is more, the defendant and the undercover foster mother discussed the fact that a relationship between an adult and a child is not appropriate and then decided on a cover story in which the defendant would claim to be the child's babysitter. PSIR ¶ 11. The defendant then proceeded to use this cover story in her interview with law enforcement officers before being confronted with her chats. PSIR ¶ 17. The defendant's claim that she did not want to have sex with the child is also at odds with her conduct. The chats, which detail multiple sex acts and repeatedly seek to groom the child lay bare the defendant's intentions, as does the fact that the defendant brought sex toys and condoms to the place where she expected to meet the child. PSIR ¶ 18.

      Against this backdrop, it is, unfortunately, not surprising that the psychosexual assessment suggests that the defendant has a moderate to high tendency to engage in self-distortion and a very high tendency to engage in distortion of other people. Dkt. # 50 at 8-9. The psychosexual assessment also says that the defendant's self-reported sexual attraction to certain groups of people was inconsistent with a viewing test. *Id.* at 12 ("[Defendant] considerably underrated her interests to juvenile female and somewhat underrated her interests to adolescent boys and very young girls, relative to her measured viewing time results"). And it says that the defendant has a high sexual interest in infant females relative to a sample of New York sex offenders. *Id.* at 16.

Page 2

      While the childhood abuse described by the defendant is horrific, the Court must balance this mitigating fact with, *inter alia*, the danger that the defendant presents to children in the community as well as her need for post-imprisonment rehabilitation. The defendant's comments about her conduct, her engagement in deception, and her attraction to children all support the imposition of a Guidelines sentence.

      I thank the Court for its attention to this matter.

                                              Respectfully submitted,

                                              CARLA B. FREEDMAN
                                              United States Attorney

By: _____
     Joshua R. Rosenthal
     Assistant United States Attorney
     Bar Roll No. 700730

cc:  Mark J. Sacco, Esq. (by ECF)
     USPO Kristen L. Bent (by Email)